Next case is Actelion Pharmaceuticals, PTO, 2017-12-38, Mr. Hoxson. We have to deal with four days, right? This is four or five days, actually, Your Honor. Yes, Your Honor. Thank you. May it please the Court. This case involves, as you know, the Patent Term Adjustment Act, which is a patent term adjustment statute, which is very important to pharmaceutical companies, even if it's four days or even one day. And in the applying the… Let me ask you a little housekeeping question. In the red brief, in a footnote, the PTO says the district court actually addressed the merits of the issue and erred in analyzing the claim in terms of standing. Do you agree with that? And if you do, does it matter? I agree that the district court erred. The district court was trying, I think, to avoid addressing the propriety of the PTO role. So by saying that it didn't matter which way, which law applied, then he didn't have to reach the question. Did he say harmless error, or do we need to send it back? I think it's not harmless error because the district court was wrong. In fact, it did make a difference which statutory regime applied. I think you're misunderstanding the question. So the PTO doesn't say that the district court erred because it should have reached the retroactivity question. They're saying it erred just by characterizing it as a standing question rather than essentially a 12 v. 6 question. So if we concluded that the district court was factually correct that the two standards are the same, would we still have to send it back for him to consider it under a 12 v. 6 standard versus 12 v. 1? I think, first of all, the standing issue doesn't address the holiday weekend error issue. And while, of course, I'd be happy for you to send it back, I would have to agree that it would be better for practitioners and better for my client if the court simply reached the merits. So we would have to decide, we could decide either way, in connection with the harmless error analysis, whether or not the district court was correct that the two standards are the same, both pre- and post-AIA. Yes, Your Honor, I think this is a matter of statutory construction, and I think it's the job of this court to say what the law is. And everyone would be best served if the court would make a determination. And if the district court got it wrong or the district court characterized it as standing rather than something else, I think it's within this court's purview to interpret the statute as it ought to be interpreted. Okay. I think in interpreting the statute, what's important to keep in mind is that the patent term adjustment is not a performance management tool for the PTO. It's a remedial statute designed to compensate applicants for any delays in prosecution, except for delays caused by the applicant's failures to engage in reasonable efforts to conclude prosecution. And in this case, everyone agrees that there was no applicant delay. So if you look at the PTO's initial calculations, which we set out in the appendix at page 197, it specifies there's no applicant delay. Let me do another cleanup question at this point, then. You argue, of course, that there was a miscalculation on the patent term adjustment and that it constitutes a taking as a result. If we agree with the PTO that it properly calculated PTA, does that moot your takings argument? Well, I think if you agree with the PTO that the statute was compliant with, that's correct. But I think the context here is that I think we've heard a lot that this is not – I think the PTO's argument that the patent term adjustment or patent term itself is not a matter, is not a property interest, not something which needs to be addressed in light of due process and Fifth Amendment – with a due process Fifth Amendment background. I think that that influences the standard and the degree of discretion which reasonably ought to be accorded to the PTO. I think in this case, it's important to understand that the patent term adjustment is not some kind of a gift from the PTO. It's not a discretionary bonus. It's a formula which Congress has laid out to compensate applicants for delays in prosecution. And while it's a complicated formula, its application is not discretionary. In the red brief, the PTO points out that your firm has previously included exactly similar language in non-PCT patent applications, requesting, quote, early examination and allowance of ellipsis claims. Based on those previous requests, why should this statement be enough to put the PTO on notice that you're making an express request for a national stage commitment by itself, given that they received it? Your Honor, the issue here is not whether it was reasonable for the PTO to read the boilerplate in the preliminary amendment or whether it was, you know, reasonable for the PTO to take the holiday weekend before starting examination of the case. Well, it's not a question of reasonable. The issue is whether it was a – It's not a question of reasonable. It's a question of whether the rules – Your Honor, first of all, that was not the rule that was in effect at the time that the application was filed. Secondly, the only reason for taking a patent term away from a patent applicant is if it's shown that the applicant failed to engage in reasonable efforts to conclude prosecution. Here, I don't see how that can be seen as a failure to take advantage of an optional procedure, which had no impact on patent term under the earlier version of the statute, which mentions only completion of the requirements under 371 and does not mention commencement of a national phase. Why are the time limits in 371B and F not requirements, in your view? Well, the time limits in 371B and F are not – F is not a requirement because it's an optional procedure. You're not required to request early examination. And B is not a requirement. It's a deadline. It says prosecution – it says the national phase shall not – shall commence no later than 30 months. Aren't we ignoring the elephant in the room here, Box 3? Yeah. That was left unchecked? Well, Your Honor, as I mentioned, the Box 3, so the early commencement of the national phase, that was left unchecked. That box was not relevant to patent term adjustment at the time this application was filed. As a matter of – as an experienced practitioner, are you aware of any other method by which an applicant has successfully made an express request? Well, an applicant could make an express request at any time. You could just file a piece of paper. We could have filed, let's say, a piece of paper – we filed this case on Thursday. We could have filed a piece of paper on Friday that said express request, highlight, you know, bold stuff. Your Honor, I ask you a specific question. As an experienced practitioner, are you aware of an example where an applicant has made an express request without a Box 3 checked? I don't know offhand of a case like that, but I don't know of a case where it's been denied on that ground either. Generally, the PTO does not – you know, makes it very clear in the language in the NPEP and in their own regulations that their forms are advisory. They're not mandatory. They don't have – they're not – they're not rules. They're not subject to the basic common law. Right, so even if – but even if they're not mandatory, even if the form didn't have to be checked, you still had to have something to make an express request, right? Yes. And that didn't come until later, right? Well, Your Honor, we didn't – the express request, as I think we've said, was not – commencement of national stage was not the standard for starting with 14 months at the time the application was filed. Commencement of national stage became the standard a year later when the AIATCA provisions were implemented. At the time that we did it, it was simply the requirements, and the requirements of 371 are the requirements in 371C. And that's why you will see in every paper that was filed, in the filing receipt and in every paper thereafter, the date is January 12, 2012, not January 13, 2000 – or not January 16, 2012, or 17, 2012, which was the date they ultimately accorded. So it – the 371C date is an important date. That's the date that applicants are required to put in the caption of their case all along because that's the date when prosecution starts is that 371C date. And that was the situation. National phase commencement as the start of prosecution only became the standard a year later in 2013 for calculating PTA. So that's that. And then the – this is, you know, just a case where the applicant sort of did everything it was required to do to enter the national stage on a Thursday, and the PTO found for various reasons that it could have been done as late as Tuesday. And then it said, well, if it could have been done Tuesday, we're going to take it that it was done Tuesday. Mr. Hoxie, you're into your bottle time. You can continue or save it or a combination of both. Let me just say briefly that none of the – we haven't addressed the weekend holiday exception, but that is not impacted by the start of the national phase or the express request. And I'll reserve the balance of my time. Ms. Kersvang, is it? It's Kersvang, Your Honor. Kersvang. May it please the Court, I'm Dana Kersvang for the director. PTO cannot consider an application before the time in the treaty has expired unless it gets an express request. It's not hard to make an express request. That's just box three of 23 on a three-page form submitted by counsel. They didn't do that here. Let me ask you the same question I asked your friend. Are you aware of, as a matter of practice, any other method by which an applicant has successfully made an express request other than checking box three? We haven't done an exhaustive survey on this, but I think applicants check box three. It's a very straightforward way to make an express request. But you agree that in this case an express request ultimately was made, even though the box was never checked? No, Your Honor. An express request would need to be a clear and unambiguous request. So the PTO has two things. It has the form with box three not checked, and then it has this preliminary amendment with language in the text that I believe my friend has barked called boilerplate that is routinely included in applications with no international stage where nobody is trying to request. So you're saying it was never made in this case? That's right, Your Honor. There was no express request here. The PTO is looking at these. But just back up a second and answer my question, yes or no. Are you, as you're an experienced practitioner, I didn't ask you for an exhaustive survey of the office. I just want to know, are you aware of any such instance? I am not aware of any instance where somebody has tried to request early national stage processing without checking the box. And that's not what they were doing here. This is language that requests early examination. Sorry. It's not language that requests early examination. It's language directed to the examiner. The reasonable thing, certainly not arbitrary and capricious, for the PTO to do looking at box three not checked, and this language in the preliminary amendment that is routinely used in cases without an international stage is to say they're not making an express request for early national stage processing. They do want the examiner to prioritize this case when it does begin the national stage. The patent cooperation treaty puts the applicants in the driver's seat. It is their decision whether or not to make an express request for early national stage processing. So if we conclude that your retroactivity analysis was wrong, that's just as a matter of statutory interpretation, and that the trial court erred in relying on standing. Where does that leave us? Certainly. So to take the standing argument, the standing issue first, that it does not matter that the district court used the standing label. The analysis was the merits analysis. It was that this version issue does not matter here. And as the Supreme Court said in Morrison v. National Australian Bank, there's no need to remand to affix a 12B6 label instead of a 12B1 label to the decision. Now, if you disagree with whether the Post-Technical Corrections Act, the Technical Corrections Act, applies here, that makes no difference, as the district court said. But I do want to take a step back and explain why, although it does not matter in this case, it matters tremendously in overall that the Pre-Technical Corrections Act not apply to all patents filed up to 2013. I think it would be actually helpful to have a statement from the court on this. As this court knows, the procedure for calculating PTA before the Technical Corrections Act was unwieldy to say the least. PTO had to issue PTA determinations before it knew what the PTA was going to be, and people had to file appeals before they knew what the PTO was going to do with their reconsideration. So the Technical Corrections Act fixes these procedural problems. Nobody gets less time. They certainly fix it going forward. The question is whether or not the language could reasonably be interpreted to make it retroactive. That's right, and there is no reason to think that Congress wanted us to continue to live with this broken process going forward until every application filed before 2013 has been fully examined. So there is not legislative history on this particular question, but what we would end up with, and the court knows it will be a very long time before every application filed before 2013 has been fully processed, we would end up in a situation... How many do you think there are? How many applications pending prior to 2013? I don't know the answer to that, Your Honor. Yes, there are hundreds of thousands. So we would have a situation where... Hundreds of thousands of applications, not requests to recalculate extensions. So every... Did you mean the latter? Every patent gets PTA awarded, so PTA process is an issue for every patent. So this is a statute where nobody gets less time if the PTA proceeding is not a separate proceeding under the statute, if the PTA's interpretation of that doesn't get deference. We have a world in which there are two different PTA proceedings depending on when a patent was filed. There's a world where there are lots of differences depending on when the patent is filed after the AIA. When the AIA did not say we're going to fix everything that's ever happened, it says we're going to change things going forward. There's no evidence that Congress said we're going to go back retroactively and change everything people have been relying on. So I have two answers. One is the text of the statute, right? Applied to proceedings commenced on and after that date. The PTO proceeding, as this Court knows, is made after examination is complete. It's a separate process with separate filings, separate timelines addressing a separate ultimate issue. So that is a separate proceeding and the rules for that proceeding should govern going forward. The other point I want to make, though, is the reliance point because, as the District Court found, nothing changes here. Nobody gets less PTA because of the Technical Corrections Act. There are a few people who get more, but nobody gets less. So this is not a situation in which somebody might be relying on a pre-Technical Corrections Act rule. The PTO's interpretation here of the fulfill the requirements of 371 was longstanding. It makes sense. This is a regime that is about implementing a treaty. The language of the treaty is crystal clear, that no designated office shall process or examine the international Let's get back to standing. This really isn't a question of standing, is it? It's a question of the merits, the interpretation of the law and the procedure and the timing. I think this is best viewed as a merits question. What the District Court said was they're not injured because they're wrong. They have standing if they met the requirements of the act. People do generally have standing to challenge their PTA. The District Court's decision was really a merits decision. They're not injured because they're wrong, because they're not entitled to this time under any view of the world. But as the Supreme Court has said, we don't need to remand to put a different label on that decision. The District Court was correct. They do not get this additional PTA. The District Court is correct, and we have a District Court judgment that never reached the retroactivity issue, and you're asking us to now reach the retroactivity issue. Wouldn't that just be an advisory opinion at this point? The Court can affirm on any ground supported by the record. There are any number of ways to get to the place where they don't get the additional PTA. One is that nothing changed between these two statutes. One is the Technical Corrections Act does not apply because the proceeding started after either one of those works. I only wanted to flag that this pre-Technical Corrections Act process was extremely unwieldy, and there is no reason to think that Congress would have wanted that process to continue to apply. Nobody else wanted it either. We did notice some comment on the definition of proceeding, and nobody asked for it to apply based on when the patent was filed. Some people wanted it to apply to even more patents because nobody loses time under this, and the process makes more sense. But nobody asked for it to apply based on the date that the patent was filed. There was a break between the issuance of the patent and the filing of requests to change the PTA, so it wasn't a continuous proceeding. That's right. It was a new proceeding. Exactly, Your Honor. We can't even think about what PTA is until the patent has been issued, the examination is complete, and then there's a new process, new question, new timelines. This is an entirely reasonable reading of the statute, and it would make no sense to think that Congress wanted us to interpret the statute the other way, to continue living under this unwieldy pre-Technical Corrections Act regime where people were filing court cases before they knew what the PTO was going to do with their reconsideration motion. That just didn't make sense. But what we have, looking at either version of the statute, is a regime that is implementing a treaty that is very clear. PTO, no designated office, can start until the time in the treaty is up without an express request, and there simply was no express request here. So it's really the treaty provisions that govern here, or the interaction between that and 371. So 371 implements the treaty. It should certainly be read to do what it was intended to do, which is implement the treaty, not to do something different from the treaty. And under both 371 and the treaty itself, it is quite clear. PTO can't start without an express request. There just wasn't an express request here. It is not hard to make one. They can't start, or they can't start early? I'm sorry? They can't start to examine, or they can't start to examine early? They can't start to examine until that time in Article 22 of the treaty has expired. So either there's an express request or the 30 days has passed. Sorry, did I say 30 days? I meant 30 months. The 30 days, I'm sorry. Yeah. No, I said 30 days, not you. 30 days come up a lot. But, yeah, either there's an express request or that time has expired. 371 explicitly references the time in Article 22 of the treaty, as does Article 23 of the treaty. And there simply was not an express request here. If there are no further questions, I have a question. I just want to say, it sounds a lot like you're arguing international law here. I've read some places that federal courts can't apply international law. It's so confusing. Your Honor, this treaty was explicitly implemented in 371. I know. And the well-established canon. I'm just saying. All right. Thank you, Your Honor. If there are no further questions, that's it. That's what's called a curve ball. Mr. Hoxie, you have some rebuttal time, almost three minutes. Okay, thank you, Your Honor. Yeah, I just want to make a couple of quick points. First of all, Judge Lurie, with respect to your point that the request to reconsider the patent term adjustment was a new proceeding, the issue here relates to actions taken during the application process, whether we requested or didn't request, or if you determine that that's a relevant factor or not. So I think the retroactivity does apply to the applications that were prepared. When was the petition for reconsideration of PTA? It was filed subsequent. It had to be filed subsequent to the plan of the patent, obviously. So it was a separate proceeding. Okay, Your Honor. But relating to actions, but the actions that are changed in that section of the Technical Corrections Act that we're referring to were actions taken not in the PTA proceeding but in the application proceeding. And the next point I'd like to make, Your Honor, if I may, is that under either version of the statute, the pre- or post-AIA TCA, the PTO concedes that all the requirements to international stage were certainly met by Monday, January 16th. And that's in the filing receipt, and they've agreed to that. The only reason for taking this additional day and starting the 14-month period on the 17th was that Monday was Martin Luther King Day. So because Monday happened to be Martin Luther King Day, even though there was nothing more for applicant to do, and the 30 months had passed and everything was good to go, there was this additional delay. And the PTO has argued that ECT Rule 80.5 mandates this extension of time. That rule, I'd just like to point out, relates not to all time periods but only to periods to provide documents or fees, not to the 30-month period. So, you know, with regard to sort of in the abstract things starting. And in the context of the 14-month period, you know, whether the PTO wants to start processing earlier or it feels like it shouldn't or wants to start it later or how they manage it internally, none of that is relevant to those are all delays, and they may be totally justified, but none of those are relevant to the applicant's patent term adjustment under 35 UIC 135. And, Your Honor, I see my time is up. Quick question. Other than patent term adjustments, Mr. Ossie, have you filed since January of 2012, have you filed anything with the PTO asking for early examination and allowance of claims? I believe we have done that. Thank you. Thank you. Counsel will take the case under advisement.